TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
CHRISTOPHER C. KENDALL (Cal. Bar. No. 274365)
BENEDETTO L. BALDING (Cal. Bar No. 244508)
Assistant United States Attorneys
Deputy Chiefs, International Narcotics,
 Money Laundering, and Racketeering Section
     1400 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone:  (213) 894-2576/2274
     Facsimile:  (213) 894-0142
     E-mail:     christopher.kendall@usdoj.gov
                 benedetto.balding@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

                 UNITED STATES DISTRICT COURT

             FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,          No. CR 2:21-00588-JFW-1

          Plaintiff,               PLEA AGREEMENT FOR DEFENDANT
                                   MARCO ANTONIO SANTILLAN VALENCIA
               v.

MARCO ANTONIO SANTILLAN
VALENCIA,

          Defendant.

     1.   This constitutes the plea agreement between MARCO ANTONIO

SANTILLAN VALENCIA ("defendant") and the United States Attorney's

Office for the Central District of California (the "USAO") in the

above-captioned case.  This agreement is limited to the USAO and

cannot bind any other federal, state, local, or foreign prosecuting,

enforcement, administrative, or regulatory authority.

                    DEFENDANT'S OBLIGATIONS

     2.   Defendant agrees to:

a.   At the earliest opportunity requested by the USAO and provided by the Court, appear and plead guilty to counts one and twenty-one of the Indictment in United States v. Marco Antonio Santillan Valencia, et al., CR No. 2:21-00588-JFW, which charge defendant with Conspiracy to Violate the Export Administration Regulations, in violation of 50 U.S.C. § 4819(a), (b), and Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. § 1956(h).

b.   Not contest facts agreed to in this agreement.

c.   Abide by all agreements regarding sentencing contained in this agreement.

d.   Appear for all court appearances, surrender as ordered for service of sentence, obey all conditions of any bond, and obey any other ongoing court order in this matter.

e.   Not commit any crime; however, offenses that would be excluded for sentencing purposes under United States Sentencing Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not within the scope of this agreement.

f.   Be truthful at all times with the United States Probation and Pretrial Services Office and the Court.

g.   Pay the applicable special assessments at or before the time of sentencing unless defendant has demonstrated a lack of ability to pay such assessments.

3.   Defendant further agrees:

a.   To forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the

2

items listed in Appendix A, attached hereto (collectively, the "Forfeitable Assets").

b.    To the Court's entry of an order of forfeiture at or before sentencing with respect to the Forfeitable Assets and to the forfeiture of the assets.

c.    To take whatever steps are necessary to pass to the United States clear title to the Forfeitable Assets, including, without limitation, the execution of a consent decree of forfeiture and the completing of any other legal documents required for the transfer of title to the United States.

d.    Not to contest any administrative forfeiture proceedings or civil judicial proceedings commenced against the Forfeitable Assets.  If defendant submitted a claim and/or petition for remission for all or part of the Forfeitable Assets on behalf of himself or any other individual or entity, defendant shall and hereby does withdraw any such claims or petitions, and further agrees to waive any right he may have to seek remission or mitigation of the forfeiture of the Forfeitable Assets.

e.    Not to assist any other individual in any effort falsely to contest the forfeiture of the Forfeitable Assets.

f.    Not to claim that reasonable cause to seize the Forfeitable Assets was lacking.

g.    To prevent the transfer, sale, destruction, or loss of any and all assets described above to the extent defendant has the ability to do so.

h.    To fill out and deliver to the USAO a completed financial statement listing defendant's assets on a form provided by the USAO.

i.    That forfeiture of Forfeitable Assets shall not be counted toward satisfaction of any special assessment, fine, restitution, costs, or other penalty the Court may impose.

<u>THE USAO'S OBLIGATIONS</u>

4.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

c.    At the time of sentencing, move to dismiss the remaining counts of the indictment as against defendant.  Defendant agrees, however, that at the time of sentencing the Court may consider any dismissed charges in determining the applicable Sentencing Guidelines range, the propriety and extent of any departure from that range, and the sentence to be imposed.

d.    At the time of sentencing, provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a two-level reduction in the applicable Sentencing Guidelines offense level, pursuant to U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an additional one-level reduction if available under that section.

<u>NATURE OF THE OFFENSES</u>

5.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, conspiracy to violate the Export Administration Regulations ("EAR"), in violation of 50 U.S.C. § 4819(a), (b), the following must be true: (1) there was an agreement between two or more people to violate the EAR, namely, by (a) soliciting the export of, attempting to export, causing others to export, and aiding, abetting, counseling, commanding, and inducing

the export from the United States to Mexico of, items controlled on the Commerce Control List ("dual-use items"), without first having obtained a license or authorization from the Department of Commerce to do so, as required by the EAR, in violation of 18 U.S.C. §§ 4819(a)(2); and by (b) engaging in transactions and taking other actions with the intent to evade the provisions of the EAR, in violation of 18 U.S.C. § 4819(a)(2) and (2) defendant willfully became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

6.  Defendant understands that for defendant to be guilty of the crime charged in count twenty-one, that is, conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h), the following must be true: (1) there was an agreement between two or more people to violate 18 U.S.C. § 1956(a)(1)(A)(i), and (2) defendant willfully became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.  For a defendant to be guilty of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(i), the following must be true: (1) defendant conducted a financial transaction involving property that represented the proceeds of drug trafficking; (2) defendant knew the property represented the proceeds of some form of unlawful activity, and (3) defendant acted with the intent to promote the carrying on of drug trafficking.  A "financial transaction" is a transaction involving the movement of funds by wire or other means that (or the use of a financial institution that is engaged in, or the activities of which) affects interstate or foreign commerce in any way.

PENALTIES

7.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 50 U.S.C. § 4819(a), (b), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $1,000,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

8.    Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 1956(h), is: 20 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

9.    Defendant understands, therefore, that the total maximum sentence for all offenses to which defendant is pleading guilty is: 40 years' imprisonment; a three-year period of supervised release; a fine of $1,500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

10.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

11.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition.  Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license.  Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

12.   Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case make it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States.  Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case.  Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status.  Defendant nevertheless affirms that he wants to plead guilty

regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

FACTUAL BASIS

13.   Defendant admits that defendant is, in fact, guilty of the offenses to which defendant is agreeing to plead guilty.  Defendant and the USAO agree to the statement of facts provided below and agree that this statement of facts is sufficient to support pleas of guilty to the charges described in this agreement and to establish the Sentencing Guidelines factors set forth in paragraph 15 below but is not meant to be a complete recitation of all facts relevant to the underlying criminal conduct or all facts known to either party that relate to that conduct.

Beginning on or before March 2020, and continuing until on or about February 24, 2021, in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, defendant and his co-conspirators knowingly and willfully conspired and agreed to: (1) solicit the export of, attempt to export, cause others to export, and aid, abet, counsel, command, and induce the export from the United States to Mexico of, items controlled by the Export Administration Regulations ("EAR") and identified on the Commerce Control List ("dual-use items"), published at 15 Code of Federal Regulations Part 774, Supp. No. 1, without having obtained a license or authorization from the Department of Commerce to do so, as required by the EAR, in violation of 50 U.S.C. §§ 4819(a)(2); and (2) engage in transactions and take other actions with the intent to evade the provisions of the EAR, in violation of 50 U.S.C. § 4819(a)(2).  Defendant knew that the export of these dual-use items to Mexico without a license was unlawful and agreed with his coconspirators to take steps to conceal the conduct from authorities.  Defendant willfully became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.  In so doing, defendant acted as a manager and supervisor of criminal activity that involved more than five participants.

The conspiracy was carried out as follows: (1) defendant would agree to obtain dual-use items and other similar goods in the United States to be transported to Mexico on behalf of co-conspirators, including members of the Mexico-based Cartel Jalisco Nueva Generacion ("CJNG") drug cartel; (2) using funds in the United States that had been provided by co-conspirators in Mexico to defendant, other co-conspirators would purchase

8

dual-use items and other similar goods in the United States on behalf of defendant to be transported to Mexico; (3) co-conspirators would transport dual-use items and other similar goods that had been purchased in the United States to Whittier, California, where defendant would arrange for such items to be further transported to Mexico; and (4) co-conspirators would pick up dual-use items and other goods in Whittier, California, and elsewhere, and transport those dual-use items and other similar goods to Mexico.

In addition, beginning on or before March 2020, and continuing until on or about February 24, 2021, in Los Angeles, Orange, Riverside, San Bernardino, Santa Barbara, and Ventura Counties, within the Central District of California, and elsewhere, defendant and a co-conspirator ("Co-Conspirator #1"), and others, conspired with each other to conduct and attempt to conduct financial transactions affecting interstate and foreign commerce with the intent to promote the carrying on of specified unlawful activity, namely, the unlawful distribution of controlled substances, knowing that the funds involved in those financial transactions represented the proceeds of some form of unlawful activity, and which funds were, in fact, the proceeds of a specified unlawful activity, namely, the unlawful distribution of controlled substances, in violation of 18 U.S.C. § 1956(a)(1)(A)(i).

The money laundering conspiracy was carried out as follows: (1) defendant would agree to obtain firearms, firearms accessories, ammunition, and other similar items in the United States to be transported to Mexico on behalf of members of the CJNG drug cartel; (2) using drug proceeds in the United States that had been provided by co-conspirators in Mexico to defendant, Co-Conspirator #1, and others would purchase firearms, firearms accessories, ammunition, and other similar items in the United States on behalf of defendant to be transported to Mexico to promote the drug-trafficking activities of co-conspirators in Mexico; (3) Co-Conspirator #1 and others would transport firearms, firearms accessories, ammunition, and other similar items that had been purchased in the United States to Whittier, California, where defendant would arrange for such items to be further transported to Mexico; and (4) individuals acting on behalf of defendant would pick up firearms, firearms accessories, ammunition, and other similar items in Whittier, California, and elsewhere, and transport those items to Mexico.

In furtherance of these conspiracies, defendant and his co-conspirators committed at least the following overt acts:

Between March 6 and 21, 2020, defendant and Co-Conspirator #1 discussed obtaining firearms from individuals in Nevada and Oregon and transporting firearms and firearms parts to Mexico.

On April 5, 2020, defendant asked Co-Conspirator #1 to send defendant photographs of firearms that Co-Conspirator #1 had

obtained on behalf of defendant to be transported to Mexico, which Co-Conspirator #1 later sent.

On April 9, 2020, Co-Conspirator #1 informed defendant that he had obtained ammunition to be transported to Mexico, and that Co-Conspirator #1 would be delivering the ammunition to Co-Conspirator #2 the following day.

On May 27, 2020, in text messages using coded language, defendant instructed Co-Conspirator #1 to attempt to obtain magazines and other firearms parts, including a "M249 firing pin," referring to a firing pin for an M249 light machine gun, a dual-use item.

On June 2, 2020, in a text message using coded language, defendant informed Co-Conspirator #1 that he was using a new telephone and instructed Co-Conspirator #1 to always have two telephones.

On June 19, 2020, in text messages using coded language, defendant and Co-Conspirator #1 discussed reimbursing a co-conspirator who had purchased a Barrett .50 caliber rifle on behalf of defendant and Co-Conspirator #1.

On July 22, 2020, at a shopping center parking lot in Corona, California, defendant and Co-Conspirator #3 met with a co-conspirator and accepted a black bag from the co-conspirator; shortly thereafter, defendant and Co-Conspirator #3 purchased firearms, firearms parts, firearms accessories, and/or ammunition to be transported to Mexico.

On July 31, 2020, in text messages using coded language, defendants and Co-Conspirator #3 discussed packaging ammunition in a van at the Nevada residence of Co-Conspirator #1 and transporting the ammunition to defendant's residence in Whittier, California.

On July 31, 2020, Co-Conspirator #1, #3, and #4 loaded ammunition into a van at Nevada residence of Co-Conspirator #1 and were stopped by law enforcement in San Bernardino County while attempting to transport the ammunition to defendant's residence in Whittier, California.  The following items were in the van: (a) approximately 63,400 rounds of .223 caliber ammunition; (b) approximately 1,000 rounds of .300 caliber ammunition; (c) various firearms parts and accessories, including two Trijicon ACOG scopes, approximately 20 50-round ammunition belts, and approximately 20 steel high-capacity magazines; and (d) approximately $52,471 in United States currency and approximately 10 United States Postal Service Money Orders each in the value of $1,000.

Also on July 31, 2020, Co-Conspirator #1 possessed the following items at his Nevada residence: (a) approximately 44,440 rounds of .223 caliber ammunition; (b) approximately 1,000 rounds of .300 caliber ammunition; (c) approximately

10,210 rounds of .50 caliber ammunition; (d) over 2,800 rounds of various assorted ammunition, including 9mm Luger caliber ammunition, .38 Special ammunition, .44 Remington Magnum ammunition, .380 Auto ammunition, .22 WMR ammunition, and .308 Winchester caliber ammunition; and (e) firearms parts and accessories including .50 BMG caliber ammunition links and assorted firearms magazines.

On August 21, 2020, in telephone conversations using coded language, defendant and a co-conspirator discussed transporting drugs and firearms between Mexico and the United States, discussed bulk cash drug proceeds that the co-conspirator had transported to defendant, discussed a discrepancy in the amount of bulk cash drug proceeds transported, and discussed the manner in which the co-conspirator had sealed the cash inside a Ziploc bag.

On September 10, 2020, Co-Conspirator #2 attempted to transport ammunition and firearms accessories to Mexico for defendant in furtherance of this conspiracy.

On November 5, 2020, defendant and Co-Conspirator #5 loaded firearms parts and ammunition into a trailer at the Whittier, California residence of defendant so that Co-Conspirator #5 could later transport those items to Mexico. On November 6, 2020, in a trailer in Westlake Village, California, Co-Conspirator #5 possessed the following items, which he ultimately intended to transport to Mexico on behalf of defendant: (a) approximately 77,000 rounds of .223 ammunition; (b) approximately 300 rounds of .50 caliber armor-piercing incendiary ammunition; and (c) firearms parts and accessories including approximately twelve Trijicon ACOG rifle scopes and one mini-gun housing unit. On November 18, 2020, defendant and Co-Conspirator #5 loaded several boxes of ammunition from the storage unit in Whittier, California into a trailer for Co-Conspirator #5 to transport to Mexico.

On January 8, 2021, defendant and Co-Conspirator #3 possessed the following items inside a storage unit in Whittier, California to be ultimately transported to Mexico: (a) approximately 10,000 rounds of 8mm Mauser caliber rifle ammunition bearing World War II era German factory markings; (b) approximately 6,600 rounds of 7.62x51mm caliber ammunition; and (c) approximately 398 rifle magazines.

On January 11, 2021, at his Nevada residence, Co-Conspirator #1 possessed approximately 20,000 rounds of 7.62x39mm caliber ammunition, which defendant, Co-Conspirator #1, and Co-Conspirator #3 intended to have transported to Mexico.

On January 20, 2021, in his Whittier, California residence, defendant possessed approximately 20,000 rounds of 7.62x39mm caliber ammunition, an Operating Rod Assembly for an M249 light machine gun, and various firearms parts and accessories, which defendant intended to transport to Mexico, and approximately

$20,000 in drug proceeds to be used to purchase firearms, firearms parts, firearms accessories, and ammunition to be transported to Mexico.

When defendant engaged in the foregoing activities, he knew that the funds were the proceeds of specified unlawful activity, namely, drug trafficking, affecting interstate and foreign commerce, and that the transactions using those funds to purchase ammunition and other items were designed to promote the carrying on of drug trafficking. Defendant agrees that the value of the laundered funds involved in the conspiracy was greater than $150,000 but not greater than $250,000.

SENTENCING FACTORS

14. Defendant understands that in determining defendant's sentence the Court is required to calculate the applicable Sentencing Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

15. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count One:

| | | |
|---|---|---|
| Base Offense Level: | 26 | [U.S.S.G. § 2M5.2] |
| Aggravating Role: | +3 | [U.S.S.G. § 3B1.1(b)] |

<u>Count Twenty-One:</u>

| | | |
|---|---|---|
| Base Offense Level: | 8 | [U.S.S.G. § 2S1.1(a)(2), |
| [Value of laundered funds more than $150,000 but not more than $250,000] | +10 | 2B1.1(b)(1)(F)] |
| Specific Offense Characteristics | | |
|    Defendant Knew or Believed that the Laundered Funds Were Drug Trafficking Proceeds: | +6 | [U.S.S.G. § 2S1.1(b)(1)] |
|    § 1956 conviction: | +2 | [U.S.S.G. § 2S1.1(b)(2)(B)] |
| Aggravating Role: | +3 | [U.S.S.G. § 3B1.1(b)] |
| Grouping Adjustment: | 0 | [U.S.S.G. §§ 3D1.2(a), (b), 3D1.4] |

Defendant and the USAO reserve the right to argue that additional specific offense characteristics, adjustments, and departures under the Sentencing Guidelines are appropriate.

16.   Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

17.   Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

<u>WAIVER OF CONSTITUTIONAL RIGHTS</u>

18.   Defendant understands that by pleading guilty, defendant gives up the following rights:

     a.   The right to persist in a plea of not guilty.

     b.   The right to a speedy and public trial by jury.

c.    The right to be represented by counsel -- and if necessary have the Court appoint counsel -- at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel -- and if necessary have the Court appoint counsel -- at every other stage of the proceeding.

d.    The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.    The right to confront and cross-examine witnesses against defendant.

f.    The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.    The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.    Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

<u>WAIVER OF APPEAL OF CONVICTION</u>

19.    Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that

14

the statement of facts provided herein is insufficient to support
defendant's pleas of guilty.

<u>LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE AND COLLATERAL ATTACK</u>

20.  Defendant agrees that, provided the Court imposes a term of
imprisonment within or below the range corresponding to an offense
level of 26 and the criminal history category calculated by the
Court, defendant gives up the right to appeal all of the following:
(a) the procedures and calculations used to determine and impose any
portion of the sentence; (b) the term of imprisonment imposed by the
Court; (c) the fine imposed by the Court, provided it is within the
statutory maximum; (d) to the extent permitted by law, the
constitutionality or legality of defendant's sentence, provided it is
within the statutory maximum; (e) the term of probation or supervised
release imposed by the Court, provided it is within the statutory
maximum; and (f) any of the following conditions of probation or
supervised release imposed by the Court: the conditions set forth in
Second Amended General Order 20-04 of this Court; the drug testing
conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the
alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

21.  Defendant also gives up any right to bring a post-
conviction collateral attack on the convictions or sentence, except a
post-conviction collateral attack based on a claim of ineffective
assistance of counsel, a claim of newly discovered evidence, or an
explicitly retroactive change in the applicable Sentencing
Guidelines, sentencing statutes, or statutes of conviction.
Defendant understands that this waiver includes, but is not limited
to, arguments that the statutes to which defendant is pleading guilty
are unconstitutional, and any and all claims that the statement of

15

facts provided herein is insufficient to support defendant's pleas of guilty.

22. The USAO agrees that, provided (a) all portions of the sentence are at or below the statutory maximum specified above and (b) the Court imposes a term of imprisonment within or above the range corresponding to an offense level of 26 and the criminal history category calculated by the Court, the USAO gives up its right to appeal any portion of the sentence.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

23. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement; and (b) should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then (i) any applicable statute of limitations will be tolled between the date of defendant's signing of this agreement and the filing commencing any such action; and (ii) defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

## RESULT OF VACATUR, REVERSAL OR SET-ASIDE

24. Defendant agrees that if any count of conviction is vacated, reversed, or set aside, the USAO may: (a) ask the Court to resentence defendant on any remaining count of conviction, with both

the USAO and defendant being released from any stipulations regarding sentencing contained in this agreement, (b) ask the Court to void the entire plea agreement and vacate defendant's guilty plea on any remaining count of conviction, with both the USAO and defendant being released from all their obligations under this agreement, or (c) leave defendant's remaining conviction, sentence, and plea agreement intact.  Defendant agrees that the choice among these three options rests in the exclusive discretion of the USAO.

<u>EFFECTIVE DATE OF AGREEMENT</u>

25.  This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

<u>BREACH OF AGREEMENT</u>

26.  Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO may declare this agreement breached.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing. If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then: (a) if defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas, and (b) the USAO will be relieved of all its obligations under this agreement.

27.  Following the Court's finding of a knowing breach of this agreement by defendant, should the USAO choose to pursue any charge that was either dismissed or not filed as a result of this agreement, then:

a.  Defendant agrees that any applicable statute of limitations is tolled between the date of defendant's signing of this agreement and the filing commencing any such action.

b.  Defendant waives and gives up all defenses based on the statute of limitations, any claim of pre-indictment delay, or any speedy trial claim with respect to any such action, except to the extent that such defenses existed as of the date of defendant's signing this agreement.

c.  Defendant agrees that: (i) any statements made by defendant, under oath, at the guilty plea hearing (if such a hearing occurred prior to the breach); (ii) the agreed to factual basis statement in this agreement; and (iii) any evidence derived from such statements, shall be admissible against defendant in any such action against defendant, and defendant waives and gives up any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that the statements or any evidence derived from the statements should be suppressed or are inadmissible.

<u>COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES</u>

<u>OFFICE NOT PARTIES</u>

28.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing

recommendations or the parties' agreements to facts or sentencing factors.

29.   Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the calculations in paragraph 15 are consistent with the facts of this case.  While this paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation and Pretrial Services Office and the Court, even if that factual information may be viewed as inconsistent with the facts agreed to in this agreement, this paragraph does not affect defendant's and the USAO's obligations not to contest the facts agreed to in this agreement.

30.   Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

NO ADDITIONAL AGREEMENTS

31.   Defendant understands that, except as set forth herein or in any contemporaneously signed and filed addenda or supplements signed by all parties, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

32.   The parties agree that this agreement will be considered part of the record of defendant's guilty plea hearing as if the entire agreement had been read into the record of the proceeding.

AGREED AND ACCEPTED

UNITED STATES ATTORNEY'S OFFICE
FOR THE CENTRAL DISTRICT OF
CALIFORNIA

TRACY L. WILKISON
United States Attorney


_____          5/23/2022
CHRISTOPHER C. KENDALL                    Date
BENEDETTO L. BALDING
Assistant United States Attorneys

_____          5/23/22
MARCO ANTONIO SANTILLAN VALENCIA          Date
Defendant

_____          5/23/22
ADITHYA MANI                              Date
Deputy Federal Public Defender
Attorney for Defendant MARCO
ANTONIO SANTILLAN VALENCIA

## CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety. I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney. I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement. No promises, inducements, or representations of any kind have been made to me other than those contained in this or in an agreement signed by all parties or on the record in court. No one has threatened or forced me in any way to enter into this agreement. I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

_Marco Santillan_                    _5/23/22_
MARCO ANTONIO SANTILLAN VALENCIA          Date
Defendant

## CERTIFICATION OF DEFENDANT'S ATTORNEY

I am MARCO ANTONIO SANTILLAN VALENCIA's attorney. I have carefully and thoroughly discussed every part of this agreement with my client. Further, I have fully advised my client of his rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing

1   Guidelines provisions, and of the consequences of entering into this

2   agreement.  To my knowledge: no promises, inducements, or

3   representations of any kind have been made to my client other than

4   those contained in this agreement or in an agreement signed by all

5   parties or on the record in court; no one has threatened or forced my

6   client in any way to enter into this agreement; my client's decision

7   to enter into this agreement is informed and voluntary; and the

8   factual basis set forth in this agreement is sufficient to support my

9   client's entry of guilty pleas pursuant to this agreement.

10  _____        _____5-23-22_____
                                            Date
11  ADITHYA MANI
    Deputy Federal Public Defender
12  Attorney for Defendant MARCO
    ANTONIO SANTILLAN VALENCIA
13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                22

**APPENDIX A**

Defendant agrees to forfeit all right, title, and interest in and to any and all monies, properties, and/or assets of any kind, derived from or acquired as a result of, or used to facilitate the commission of, or involved in the illegal activity to which defendant is pleading guilty, specifically including, but not limited to, the following items (collectively, the "Forfeitable Assets"):

Items seized on July 31, 2020, in San Bernardino County:

1.    Approximately 49,400 rounds of .223 Remington caliber ammunition manufactured by Wolf;

2.    Approximately 14,000 rounds of .223 Remington caliber ammunition manufactured by Giulio Fiocchi;

3.    Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Arms Corporation of the Philippines ("Armscor");

4.    Various firearms parts and accessories, including two Trijicon ACOG scopes, approximately 20 50-round ammunition belts, approximately 20 steel high-capacity magazines; and

5.    Approximately $52,471 in United States currency and approximately 10 United States Postal Service Money Orders each in the value of $1,000.

Items seized on July 31, 2020, in Pahrump, Nevada:

1.    Approximately 34,920 rounds of .223 Remington caliber ammunition manufactured by Wolf;

2.    Approximately 1,000 rounds of .300 Blackout caliber ammunition manufactured by Armscor;

3.    Approximately 10,210 rounds of .50 BMG caliber ammunition manufactured by Lake City Army Ammunition Plant;

4.   Approximately 7,520 rounds of .223 Remington caliber ammunition manufactured by Lake City Army Ammunition Plant;

5.   Approximately 2,000 rounds of .223 Remington caliber ammunition manufactured by Poongsan Corporation;

6.   Over 2,800 rounds of various assorted ammunition, including 9mm Luger caliber ammunition, .38 Special ammunition, .44 Remington Magnum ammunition, .380 Auto ammunition, .22 WMR ammunition, and .308 Winchester caliber ammunition;

7.   Firearms parts and accessories including .50 BMG caliber ammunition links and assorted firearms magazines.

Items seized on September 10, 2020, at the Otay Mesa Port of Entry:

1.   One Daniel Defense model DD5 V4, 7.62 caliber rifle with an obliterated serial number;

2.   One War Sport Industries model GPR, 5.56mm/.223 caliber rifle with an obliterated serial number;

3.   Approximately 44 rounds of .22 caliber ammunition manufactured by Armscor;

4.   One P-mag 7.62mm caliber black magazine;

5.   Two FNH 7.62mm caliber 10-round magazines;

6.   .357 Magnum caliber ammunition manufactured by Hornady Manufacturing Company;

7.   .38 Special caliber ammunition manufactured by Federal Cartridge Company;

8.   .357 Magnum caliber ammunition manufactured by Remington Arms Company;

9.   .357 Magnum caliber ammunition manufactured by Federal Cartridge Company;

10. 9mm Luger caliber ammunition manufactured by Remington Arms Company;

11. 9mm Luger caliber ammunition manufactured by CCI/Speer;

12. .22 caliber ammunition manufactured by CCI/Speer;

13. 12 gauge ammunition manufactured by Federal Cartridge Company;

14. 12 gauge ammunition manufactured by Winchester;

15. 12 gauge ammunition manufactured by Winchester;

16. Firearms parts and accessories including a magazine and optic sights/lenses; and

17. Approximately $10,320 in United States currency.

Items seized on September 11, 2020, in Midway City, California:

1. One Sig Sauer model SIG 716-G2, 6.5mm Creedmoor caliber rifle with an obliterated serial number;

2. Three FN America Model SCAR 20S, 7.62mm caliber rifles with obliterated serial numbers; and

3. Several magazines including two .50 caliber magazines, one 5.56mm caliber P-mag magazine, three tri-colored magazines, one Caltech 7.62mm caliber black magazine, and one black P-mag 7.62mm caliber 10-round magazine.

Items seized on November 6, 2020, in Westlake Village, California:

1. Approximately 77,000 rounds of .223 ammunition;

2. Approximately 300 rounds of .50 caliber armor-piercing incendiary ammunition; and

3. Firearms parts and accessories including approximately twelve Trijicon ACOG rifle scopes and one mini-gun housing unit.

Items seized on January 8, 2021, in Whittier, California:

4. Approximately 3,400 rounds of 7.62x51mm caliber ammunition;

A-3

5.   One mini-gun housing part;

6.   One box of 20 rifle lower receivers;

7.   One box of 20 rifle trigger kits;

8.   One box of 50 rifle carry handles with rear sights;

9.   Approximately 10,000 rounds of 8mm Mauser caliber rifle ammunition bearing World War II era German factory markings;

10.  Approximately 6,600 rounds of 7.62x51mm caliber ammunition; and

11.  Approximately 398 rifle magazines.

Items seized on January 11, 2021, in Pahrump, Nevada:

Approximately 20,000 rounds of 7.62x39mm caliber ammunition.

Items seized on January 20, 2021, in Whittier, California:

1.   Approximately 20,000 rounds of 7.62x39mm caliber ammunition;

2.   An Operating Rod Assembly for an M249 light machine gun;

3.   Various firearms parts and accessories, and

4.   Approximately $20,000.